**Raphael A. THOMAS, # 185615,
Petitioner,**

v.

**Thomas R. CORCORAN, Warden,
Respondent.**

**No. Civ.A. AMD 97–2053.**

United States District Court,
D. Maryland.

Oct. 22, 1998.

---

33. *See* V.I. R. & Regs tit. 24, § 251–6 (1992) (emphasis added):

> Any information obtained for purposes of determination of Workers' Compensation rights and benefits ... (including, but not limited to, Workers' Compensation staff notes, scientific or medical data, evaluations, or status reports) *which is deemed by the Director of Workers' Compensation* to be of such nature that any disclosure would not be in the best interest of the claimant, or any other party to the action, thereof, shall not be disclosed to any party not associated directly with the case.

692

Beth Farber, Acting Federal Public Defender, Denise C. Barrett, Assistant Federal Public Defender, Baltimore, MD, for Petitioner.

J. Joseph Curran, Jr., Attorney General of Maryland, Annabelle L. Lisic, Assistant Attorney General, Criminal Appeals Division, Baltimore, MD, for Respondent.

## MEMORANDUM

DAVIS, District Judge.

Before the Court is the timely-filed pro se petition of Maryland inmate Raphael A. Thomas for habeas corpus relief (Paper No. 1); respondent's answer thereto (Paper No. 11); and a reply to the answer filed on petitioner's behalf by appointed counsel.[1] (Paper No. 21). After review of these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C.A. Section 2254(e)(2) (West.Supp. 1998). For the reasons that follow, the petition will be denied.

(i)

On October 8, 1986, petitioner was convicted of first degree murder, assault with intent to murder, robbery with a deadly weapon, and assault and battery following a jury trial in the Circuit Court for Anne Arundel County. (*See* Answer to Petition, Paper No. 11, Exhibit 1). The case arose from the robbery of a restaurant and the killing, in the course thereof, of one of the restaurant employees. On February 19, 1987, petitioner was sentenced to life imprisonment for the murder, and terms of 18 years each for the other offenses, the latter to be served concurrently to each other but consecutive to the life sentence. (*Id.*).

Petitioner appealed his conviction to the Maryland Court of Special Appeals. He assigned as error only the issue of evidentiary insufficiency. (*Id.*, Exhibit 2). Petitioner's convictions were affirmed in an unreported opinion filed on November 27, 1987. (*Id.*, Exhibit 3). Petitioner did not file a petition for *certiorari* in the Maryland Court of Appeals. (*Id.*, Exhibit 1).

Petitioner then sought post conviction relief. In accordance with the longstanding practice under the Maryland Post Conviction Procedure Act, although that statute guarantees to indigent inmates the right to counsel in connection with the first post conviction petition arising from a trial, such inmates typically file pro se "boilerplate" post conviction petitions, often crafted with the assistance of more experienced inmates. That is exactly what happened in this instance. Thomas filed such a petition, asserting a plethora of claims, includ-

---

1. In the instant petition, his first in federal court, petitioner asserts (as rephrased) that his retained trial counsel rendered constitutionally inadequate representation rising to a violation of the Sixth Amendment in that he failed to: (1) contact Orlando Snowden as an alibi witness; (2) request an alibi instruction; (3) take depositions or investigate; (4) object to the court's response to a jury note; (5) challenge a flight instruction; (6) file motions; (7) seek suppression of identification evidence; (8) object to the testimony of Detective Harp; (9) seek an instruction regarding accomplice testimony; (10) object to the trial court's reasonable doubt instruction; (11) request an instruction regarding eyewitness identification; and (12) object to the witness credibility instruction. As explained *infra*, the court concludes that consideration of the merits of all claims, but claim (12), is barred by the procedural default doctrine.

ing numerous "generic" ineffective assistance of counsel claims.

Furthermore, it appears that in this case, in keeping with Maryland practice, the statutorily-mandated hearing on an inmate's first post conviction petition was only calendared after consultation by the court with the Collateral Review Section of the Office of the Public Defender. A lawyer from that office then met with Thomas sometime before the hearing, reviewed the record of the underlying proceedings, and before and/or on the day of the hearing (and, indeed, *at the hearing itself*) counsel "amended" and "supplemented" the pro se petition which Thomas had previously filed.

Thomas and his counsel appeared for a plenary evidentiary hearing on the assigned day. Here, as in many, if not most, of the cases involving indigents represented by the Office of the Public Defender under the Maryland Post Conviction Act, the proceedings then became somewhat "bifurcated." That is to say, counsel from the Office of the Public Defender, in a kind of adaptation of the rule of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), essentially limits his involvement in the presentation of the case at the hearing to those issues he believes, in his best professional judgment, are worthy of litigating. The transcript of the hearing in the instant case is a paradigm of this peculiar adversarial regime. After introducing Thomas and eliciting a very brief biographical sketch from him, counsel's direct examination proceeded as follows:

Q   Okay. Now, Mr. Thomas, you realize that although the law says that you can file two post conviction petitions, in effect, any issue you don't raise today is probably essentially waived as far as trying to raise it in a second post conviction petition, do you know that? [2]

A Yes.

**2.**   Under current law, an inmate is no longer

Q   Okay. And you realize that any issues that I don't argue that are in your own pro se post conviction petition are issues that you can argue, if the Judge allows you to?

A Yes.

Q   *Okay. But, you've also made a decision about whether you're going to argue those issues or whether you're going to just let them speak for themselves, is that correct?*

A *Yes.*

Q   *Okay. Which are you going to do?*

A *I'm going to let them speak for themselves.*

(Paper No. 11, Exhibit 14 at 11–12) (emphases added). Thereafter, counsel proceeded to elicit limited testimony from Thomas, who was briefly cross-examined by the prosecutor. In addition to this extraordinarily limited testimonial evidence, the only other "evidence" introduced by Thomas's counsel at the hearing was the transcript of the trial. (*Id.,* Exhibit 14 at 5–6). Thomas's counsel then conferred off the record with the prosecutor, who then announced to the court that, after conferring with counsel for Thomas, there would be no need to call Thomas's trial counsel as a witness. Accordingly, counsel proceeded directly to oral argument on the factual and legal issues thus developed at the hearing. Oral argument was devoted solely to the issues counsel had raised in the amended/supplemental petitions (and oral modifications thereto), leaving the issues asserted in the original pro se petition filed by Thomas "to speak for themselves."

Following the hearing, the post conviction court (Rushworth, J.), in a memorandum opinion, vacated the conviction for assault with intent to murder and merged the armed robbery conviction into the murder conviction, but otherwise denied relief. That is, the court left intact the life sentence for murder and the consecutive 18 year sentence for assault and battery.

entitled to file two post conviction challenges.

Apart from granting limited relief as set forth above, Judge Rushworth otherwise rejected all other claims to relief. Specifically, he ruled as follows with respect to the issues counsel had orally argued at the hearing (all of which had been raised by counsel and not by Thomas): (1) trial counsel did not render ineffective assistance in failing to object to the prosecutor's closing argument; (2) there was no error as to the trial court's instruction on witness credibility; (3) there was no error as to the trial court's instruction on the binding nature of the jury instructions; (4) the claim that the assault and battery conviction (and the consecutive sentence based thereon) should merge was "moot;" and, (5) trial counsel did not render ineffective assistance in failing to move for (or in failing to advise Thomas as to the availability of) a motion for sentence modification as allowed by Maryland law.

Judge Rushworth did not expressly address the ineffective assistance of counsel claims which Thomas had listed in his boilerplate pro se petition.[3] As rephrased here, those claims included the following allegations of counsel's negligent performance of his duty to provide competent representation to Thomas: (1) failure to file motions; (2) failure to challenge extrajudicial or in-court identifications; (3) failure to challenge the testimony of Detective Harp; (4) failure to object to certain evidence; (5) failure to secure depositions; (6) failure to insist that the trial court

answer a question from the jury during deliberations; and (7) failure to argue adequately the motion for judgment of acquittal. (*Id.*, Exhibits 4 and 5). It will be recalled that Thomas and his counsel had decided to let those allegations "speak for themselves." Neither Thomas nor his counsel introduced any extrinsic evidence (i.e., evidence outside the trial record) to support these allegations or offered any legal argument justifying relief on any such ground or grounds.

Petitioner and his court-appointed counsel each timely-filed separate petitions for leave to appeal the denial, in part, of post conviction relief. Taken together, the two applications argued only that (1) the assault and battery conviction should have merged with the robbery conviction (and thus, that the sole remaining consecutive sentence should have been vacated) and (2) the trial court's instruction on witness credibility was erroneous. (*Id.*, Exhibits 6 and 7). Significantly, although each application for leave to appeal alludes to Judge Rushworth's failure to address explicitly the claims asserted in the pro se petition, *neither application for leave to appeal asserted error in the post conviction court's failure to address those claims.*

■ The significance of this omission lies in the fact that it is undisputed that under Maryland law, post conviction courts are required to make express findings and conclusions as to all contentions raised in a petition for post conviction relief. *See Cir-*

---

3. Judge Rushworth's opinion stated, in part, that he had "considered all the claims raised by [Thomas] in his request for post conviction relief" and that "all remaining requests in the Petitions for Post Conviction relief" should be denied. This statement could be interpreted to mean that Judge Rushworth considered the claims asserted in the pro se petition, found them lacking in merit and further found no need to discuss their lack of merit. The parties do not give this interpretation to Judge Rushworth's opinion, however. Rather, the parties seem to agree that more likely than not, Judge Rushworth overlooked the pro se petition. This is very likely correct. As discussed in text, Maryland law imposes an affirmative duty upon judges hearing post convic-

tion petitions to address explicitly all properly alleged claims.

This court does not mean to suggest through its use of the terms "boilerplate" and "generic" to describe Thomas's pro se petition that the claims asserted therein are necessarily frivolous or that those claims would necessarily be embraced by an *Anders* type analysis. Nevertheless, it cannot be ignored that neither Thomas nor his post conviction counsel thought enough of those claims to develop any factual support for them at the evidentiary hearing. Nor did Thomas or his post conviction counsel view those claims as meriting legal argument before Judge Rushworth during the hearing.

*incione v. State,* 119 Md.App. 471, 505, 705 A.2d 96, 112 (1998), *cert. denied,* 350 Md. 275, 711 A.2d 868 (1998); *Pfoff v. State,* 85 Md.App. 296, 303, 583 A.2d 1097, 1101 (1991). Maryland's intermediate appellate court has not hesitated to grant relief to an inmate whose properly presented claims are not adjudicated in strict accordance with Maryland law. *See Pfoff, supra* (providing "model" findings and conclusions for use by post conviction courts). In any event, the applications for leave to appeal were summarily denied on November 30, 1994.

On October 2, 1995, petitioner brought a second pro se post conviction petition in the Circuit Court for Anne Arundel County (North, J.). He again alleged many generic claims of ineffective assistance of counsel. He also complained in this second post conviction petition that the first post conviction court had failed to consider many of the claims he had asserted in his pro se petition during that earlier proceeding. Judge North focused on the portion of the transcript of the first post conviction hearing quoted above and concluded that the petitioner's pro se claims had been waived and/or abandoned.

Although in their papers before this court the parties seem to indicate that they read the record as indicating that Judge North simply *overlooked* petitioner's pro se petition, this interpretation of the record is not compelled. It seems at least equally likely, if not more likely, that Judge North reasoned that petitioner's failure to offer any evidence or argument on the generic issues of ineffectiveness of counsel should be treated as a waiver or abandonment of those issues.

Frankly, this latter interpretation of the record makes far more sense than that suggested by the parties. The suggestion that the state judge, with the files before her, could have overlooked one of the pleadings contained in the file, and indeed, the very first pleading which would have been contained in the post conviction file, is implausible. Rather, Judge North more likely concluded that Thomas's decision to let his issues "speak for themselves" constituted a waiver of those claims.

Judge North would have recognized that a successful claim of ineffective assistance of counsel must clear two hurdles. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, it must be shown that "counsel's representation fell below an objective standard of reasonableness." *Id.* If this first hurdle is overcome, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Manifestly, ineffective assistance of counsel claims rarely, if ever, "speak for themselves." To the contrary, a post conviction challenge to the performance of counsel encounters "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Whitley v. Bair,* 802 F.2d 1487, 1493 (4th Cir.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987). The burden is on one who seeks to upset a final criminal judgment of conviction to adduce evidence sufficient to overcome this "strong presumption." Judge North could reasonably have concluded that by failing to offer any evidence to overcome the presumption that counsel acted reasonably, coupled with the failure even to mention in argument any of the pro se issues, counsel and petitioner effectively waived those claims under Maryland law.

In any event, having concluded that the bulk of Thomas's claims had been waived, Judge North proceeded to consider only three claims on the merits. Specifically, she found that three non-waived claims were properly before her. She found that two of the claims were moot based on Judge Rushworth's determinations, but she granted relief as to the one remaining consecutive sentence. That is, she merged petitioner's assault and battery conviction into the robbery conviction (which had previously been merged into the murder con-

viction), and thereby vacated the sole remaining consecutive sentence. The Court of Special Appeals summarily denied Thomas's application for leave to appeal on December 20, 1996. (Paper No. 11, Exhibits 11, 12).

(ii)

■ In his answer in this court, respondent asserts that several of the claims presented here are barred from review under the "procedural default" doctrine. The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred in federal court by an inmate's failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. In *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Court extended the *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), "plain statement" rule to cases brought under 28 U.S.C. § 2254. Under *Harris*, a federal district court has a responsibility to determine whether a state court in fact based its denial of relief on state procedural grounds. The state court must make a "plain statement" that the court was doing so. If the state court's ruling is ambiguous as to whether it is relying in fact on procedural default or waiver principles, then there arises a conclusive presumption that the state court did not rely upon petitioner's failure to comply with a state procedural requirement and the federal district court should consider the federal claims on the merits.

■ In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court held that the rule announced in *Harris* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. *Id.* at 299, 109 S.Ct. 1060. Thus, claims which have never been presented in state court—or claims which were not exhausted properly in the state courts, including those not exhausted as a result of deficient performance by appointed post conviction counsel—are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *See also Whitley*, 802 F.2d at 1500–02 (failure to appeal issues in state habeas corpus proceeding constitutes procedural default in federal action under § 2254); *Collier v. Jones*, 910 F.2d 770, 772–73 (11th Cir. 1990).[4]

4. This court may consider procedurally defaulted claims on the merits only if petitioner shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Sykes*, 433 U.S. at 87, 97 S.Ct. 2497, or (2) that a fundamental miscarriage of justice would occur if the claims are not considered. *Gray v. Netherland*, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).

Petitioner has failed to establish cause and prejudice for his procedural default. Nor do petitioner's circumstances bring this case within the "fundamental miscarriage of justice" exception. *See Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The miscarriage of justice standard is directly linked to factual innocence. *Id.* at 864. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner

must pass before a court may consider constitutional claims which are defaulted. *Id.* at 861; *see Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Applying the reasoning of *Schlup*, the court is satisfied that petitioner has failed to make the requisite showing. Having carefully reviewed the record, the undersigned finds no support for the application of the actual innocence doctrine here. It is true that but for the presumption that counsel acted competently, a serious question would be raised as to the reason why counsel did not seek to challenge the out-of-court identification (by photo array) of Thomas by the sole victim of the robbery who was able to identify him at trial. One reason might be that Thomas's photograph had appeared in the local press and counsel was satisfied that cross examina-

(iii)

■ Application of the procedural default doctrine here is uncontroversial. There is simply no uncertainty over the basis for the ruling of the state court in this case. Judge North's decision to deny post conviction relief (with one notable exception, as discussed above) is squarely grounded on her finding and conclusion that Thomas had waived all claims not expressly adjudicated in Judge Rushworth's memorandum opinion. To say the least, there could hardly exist a "plain statement" of procedural default more plain than that contained in Judge North's opinion.

To the extent that the parties suggest that Judge North misread the record, this court rejects that interpretation for the reasons stated above. Moreover, even if, inexplicably, Judge North indeed overlooked the pro se petition, her finding of procedural default must be respected in any event. Fourth Circuit precedent compels the conclusion that the failure by Thomas and his counsel to seek review, in their respective applications to the Maryland Court of Special Appeals for leave to appeal, of Judge Rushworth's failure to determine explicitly the issues asserted in the pro se petition, constitutes an independent ground on which Judge North's judgment of procedural default must be respected. *Mackall v. Angelone*, 131 F.3d 442, 445 (4th Cir.1997) (en banc) (state post conviction court's conclusion that procedural default bars claim in state court not reviewable by federal district court), *cert. denied,* —— U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998); *Whitley*, 802 F.2d at 1500–02 (failure to appeal issues in state habeas corpus proceeding constitutes procedural default in federal action under § 2254); *cf. Luchenburg v. Smith*, 79 F.3d 388, 391 n. 2 (4th Cir.1996) (specific mention in application for leave to appeal to the Court of Special Appeals of ineffective assistance of counsel claim, however inartful the phrasing, sufficient to exhaust claim under Maryland law and under 28 U.S.C. § 2254). Where the state court has identified a procedural default sufficient to bar review on federal habeas with the clarity of the court in this case, a federal court has a duty to respect that determination. This court does so in this instance.

(iv)

Only one of Thomas's claims asserted here is not procedurally defaulted. *See supra* n. 1 (claim that counsel's failure to object to witness credibility instruction constitutes ineffective assistance of counsel). When a state court has adjudicated a petitioner's claims, 28 U.S.C. § 2254(d) provides the analytical framework for determining whether the state courts' findings are correct. As amended by the Antiterrorism and Effective Death Penalty Act of 1996, section 2254(d) provides that:

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

tion at trial on that point was a reasonable manner of proceeding.

In any event, the court is satisfied that speculation over the likely outcome of a suppression hearing involving the photo array is insufficient to "undermine confidence" in the outcome of petitioner's trial. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. It must be recalled that petitioner was identified by an accomplice, that physical evidence linked him to the robbery, and that the jury had before it evidence that petitioner admitted to arresting officers that he was present at the robbery. While the evidence against Thomas was not overwhelming, it is more than sufficient to justify the jury's verdict.

■ As construed by the Fourth Circuit, if a state court decision is in square conflict with precedent which is controlling as to law and fact, then the writ of habeas corpus should issue; otherwise, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. *See Green v. French,* 143 F.3d 865, 870 (4th Cir.1998). In other words, "habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.*

■ The instruction as given stated that:

[i]n judging the credibility of a witness you should bear in mind that a witness is presumed to speak the truth. The presumption is not conclusive, however, and it may be overcome by contradictory evidence, by the manner in which the witness testified, by the character of his testimony, by evidence pertaining to his motives. Where there's a conflict in the testimony with respect to a material fact, you must judge the credibility of the witness and you must determine which of the versions should be accepted as true.

(*See* Paper No. 10, Exhibit 13 at 2–102). Petitioner argues that the instruction was prejudicial because nothing in the instruction communicated to the jury that he, too, was presumed to speak the truth. Citing *United States v. Varner,* 748 F.2d 925, 926 (4th Cir.1984), and *McMillen v. United States,* 386 F.2d 29, 33 (1st Cir.1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968), petitioner contends that the instruction gave the jury no reason to think that the presumption of truthfulness should be applied evenhandedly to both prosecution witnesses and the defendant.

The court notes that a different version of this contention, focusing on trial court error, was examined in the first post conviction proceeding. There, petitioner contended that the trial court committed reversible error · in giving the instruction. The post conviction court disagreed, and reasoned as follows:

In support of this allegation, [petitioner] cites to the Court of Special Appeals decision in *Hairston v. State,* 68 Md. App. 230, 240, 511 A.2d 73 (1986), where that Court, prior to [p]etitioner's trial, held that a prosecutor may not tell the jury that "under the law," witnesses that testify for the State are assumed to be telling the truth. Unfortunately for [p]etitioner, *Hairston* is significantly different from his own case. In *Hairston,* the appellate court admonished the prosecutor, not the judge, for arguing to the jury that witnesses for the State are presumed to be telling the truth. That difference aside, the most important distinction stems from the fact that in this matter, unlike *Hairston,* witnesses for both the State and defense testified, and the instruction given by the [trial court] did not differentiate between credibility of one parties' [sic] witnesses versus the other. Therefore, *assuming arguendo* that [the trial court's] instruction was in error, it would still not have had the effect of prejudicing [p]etitioner since both the State and defense benefitted equally from its enunciation.

(*See* Paper No. 10, Exhibit 5 at 7). Thus, the post conviction court concluded that the witness credibility instruction was nonprejudicial because it was likely that the jury understood that it applied equally to prosecution and defense witnesses. Even assuming that the use of the instruction was error which, although not of constitutional dimension by itself, could nevertheless support a claim of constitutional ineffectiveness, the post conviction court's conclusion the use of the instruction was non-prejudicial, is reasonable. Accordingly, counsel's failure to object to the in-

struction did not give rise to any prejudice under the Sixth Amendment.

(v)

The court has concluded that all but one of the claims asserted by petitioner in this case are procedurally defaulted. Construing the one non-defaulted claim as a properly exhausted Sixth Amendment claim, the state court's resolution of that claim was reasonable. Accordingly, Thomas is entitled to no relief.